## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| **PEERLESS INSURANCE COMPANY,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 08-336-P-H** |
| | ) | |
| **JEREMIAH CARLETON,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

## DECISION AND ORDER ON PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

This is a case about insurance coverage for an automobile accident. Although it began with a wide range of issues, the summary judgment materials have reduced it to the following: (1) whether the Peerless insurance contract should be reformed, because of mutual mistake, to provide liability coverage for the driver Jeffrey Vigue (Counterclaim Counts V, VI, VII and VIII) and uninsured/underinsured coverage for his injured passenger, Jeremiah Carleton (Counterclaim Count III); and (2) whether it was a breach of contract for the Peerless insurance policy to fail to provide liability coverage for Jeffrey Vigue (Counterclaim Count II). I conclude that there is no evidence of mutual mistake, and there is therefore no ground for reformation. Similarly, there is no basis for finding breach of contract in the policy's failure to provide coverage. I therefore **GRANT** summary judgment to the insurance company.

## I. FACTS

I state the facts in the light most favorable to the injured passenger, Jeremiah Carleton, who is seeking to recover from the insurance company, Peerless Insurance Company.

At the time in question, Timothy Vigue owned and operated a garage business in Washington, Maine.[1]  Timothy Vigue's garage business (hereinafter "Vigue Brothers") repaired and maintained motor vehicles and occasionally sold used cars.[2]   Jeffrey Vigue was Timothy Vigue's 23-year-old son.[3]   On November 5, 2005, while driving his girlfriend Kimberly White's 1995 Chevrolet Monte Carlo sedan ("the Chevrolet"), Jeffrey Vigue lost control of the car, and went off the road in Appleton, Maine, hitting a tree ("the accident").[4]  Jeremiah Carleton, a passenger in the Chevrolet, was injured.[5]   At the time of the accident, neither Vigue Brothers nor Timothy Vigue owned, leased, hired, rented or had borrowed the Chevrolet;[6] the Chevrolet was not being used in connection with Timothy Vigue's business or his personal affairs;[7] and Vigue

---

[1] Timothy Vigue Dep. 3, 19, Mar. 4, 2009 ("March 2009 Vigue Dep.") (Attached to Def.'s Resp. to Pl.'s Statement of Material Facts ("Def.'s Resp. SMF") (Docket Item 44)) (Docket Item 44-2).

[2] March 2009 Vigue Dep. at 58.

[3] Id. at 3, 14.

[4] Id. at 61-62.  For purposes of the summary judgment record, it is undisputed that Jeffrey Vigue was a member of Timothy Vigue's household.  Id. at 3; Pl.'s Reply Statement of Material Facts No. 7 (Docket Item 48).

[5] Am. Declaratory J. Compl. ¶ 7 (Docket Item 38).  Jeremiah Carleton is not related to Timothy Vigue by blood, marriage, or adoption; nor has he ever been a ward or foster child of Timothy Vigue, or a resident of Timothy Vigue's household.  Def.'s Resp. to Pl.'s Second Req. for Admis. ¶¶ 7-8 (Ex. 2 to Pl.'s Statement of Material Facts ("Pl.'s SMF") (Docket Item 40)) (Docket Item 40-3).

[6] March 2009 Vigue Dep. at 52, 56.

[7] Id. at 56.

Brothers was not performing repairs or maintenance on the Chevrolet.[8]  During the period when the accident occurred, there were three individuals who, from time to time, worked as mechanics at Vigue Brothers,[9] and Timothy Vigue's wife worked there as a bookkeeper.[10]  But Jeffrey Vigue was not working at Vigue Brothers in November 2005.[11]

Peerless had issued a commercial auto policy to Vigue Brothers and Timothy Vigue, Policy No. BA 8050043, effective from July 7, 2005, to July 1, 2006 ("the policy").[12]  Earlier, Timothy Vigue met with James Sanborn, an insurance agent at the GHM Insurance Agency of Waterville and Augusta, Maine, to discuss the details of the insurance coverages that he was seeking.[13]  At the time of the accident, Timothy Vigue had no auto insurance policy other than this business auto policy with Peerless.[14]  Timothy Vigue intended that the commercial auto insurance policy that he purchased from Peerless would cover Jeffrey Vigue while Jeffrey Vigue was driving Ms. White's Chevrolet.[15]

---

[8] Id. at 46.

[9] Id. at 20-21.

[10] Id. at 20.

[11] Id. at 15-18, 46, 58.

[12] Am. Declaratory J. Compl. ¶ 10.

[13] Aff. of James Sanborn ¶¶ 2-3 ("Sanborn Aff.") (Ex. 3 to Pl.'s SMF) (Docket Item 40-4).  In fact, Timothy Vigue and James Sanborn met for a total of nine hours over three nights, and spent four and one-half hours discussing the commercial auto policy.  March 2009 Vigue Dep. at 36, 40.

[14] March 2009 Vigue Dep. at 32.

[15] The summary judgment record raises a material issue of fact as to who Timothy Vigue intended to be covered by the liability insurance.  Id. at 44 (stating that he intended that blood relatives as well as employees would be covered by the liability insurance); id. at 44-45 (stating that he told Sanborn that he wanted his children covered for liability when driving either customer vehicles or vehicles titled to the business); id. at 45 (stating that he understood that his children were covered by liability insurance under the policy if they were employed by Vigue Brothers or doing the business of Vigue Brothers); id. at 61 (stating that he did not expect that Jeffrey Vigue's truck would be covered by the Peerless policy unless he was employed by or working for Vigue Brothers); id. at 67 (stating that it was his intention to purchase an *(continued next page)*

3

But Sanborn does not agree that the commercial auto policy was intended to cover Jeffrey Vigue's accident in this case.[16]  Although there was an earlier dispute whether the policy as written provides coverage for the accident, Carleton no longer makes that argument, and in his legal memorandum he has not attempted to show how the policy language actually provides coverage.

In September 2006, Jeremiah Carleton sued Jeffrey Vigue and Kimberly White in Knox County Superior Court, Docket No. CV-06-55 ("the Carleton lawsuit").[17]  Jeffrey Vigue tendered the defense of that lawsuit to Peerless. Peerless declined to defend him.[18]  On November 6, 2008, Jeremiah Carleton and Jeffrey Vigue entered into an "Agreement Regarding Entry of Default Judgment."  Jeffrey Vigue admitted that he was negligent in driving the Chevrolet, admitted that his negligence caused injuries to Jeremiah Carleton and agreed to allow an entry of default against him in the Carleton lawsuit.[19] In addition, Jeffrey Vigue assigned to Jeremiah Carleton any rights that Jeffrey Vigue might have "against Peerless Insurance Company, GHM Agency or any insurance agency through which Timothy Vigue purchased insurance coverage applicable to the events alleged in the Complaint, or any other insurance

---

insurance policy to provide the maximum coverage for himself, his business and his family); id. at 69 (stating that it was his intention to cover his business and his family and he told that to Mr. Sanborn).

Carleton also relies on a 2007 deposition of Timothy Vigue taken in connection with the state court action.  See Timothy Vigue Dep. Feb. 2, 2007 (Attached to Def.'s Resp. SMF) (Docket Item 44-3).  Peerless objects to Carleton's use of the 2007 deposition, asserting that its use is unfair because Peerless was not a party to that action and, thus, did not have the opportunity to cross examine Timothy Vigue.  That dispute does not affect the outcome here.

[16] Sanborn Aff. ¶¶ 5-8.

[17] Am. Declaratory J. Compl. ¶ 8.

[18] Id. ¶ 11.

[19] Def.'s Resp. to Pl.'s First Req. for Admis. ¶¶ 1-3 & Ex. A (Ex. 4 to Pl.'s SMF) (Docket Item 40-5).

company which may have applicable insurance coverage."[20]   On December 5, 2008, after an uncontested hearing on damages, Knox County Superior Court entered judgment in the Carleton lawsuit in favor of Jeremiah Carleton and against Jeffrey Vigue in the amount of $800,000.[21]

## II. ANALYSIS

Carleton presents no argument that the language of the liability and uninsured motorist provisions of the Peerless policy actually provides coverage for the accident.   Instead, he argues that the policy should be reformed to provide that coverage or that its failure to provide coverage is a breach of contract for which he can recover as the assignee of a third-party beneficiary (Jeffrey Vigue).

Carleton presses the mutual mistake claims on Counts III, V, VI, VII and VIII.   Carleton asserts that "[b]ased upon the testimony of Timothy Vigue, and circumstantial evidence in the record, there exists evidence of a mutual mistake in the formation, expression and legal effect of the of the written instrument that memorialized the contract between Timothy Vigue and Peerless."[22]  Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 6 (Docket Item 43).  As a remedy, Carleton asks me to reform the contract to "provide liability coverage

---

[20] Agreement Regarding Entry of Default J., Carleton v. Vigue, No. CV-06-55 (Me. Sup. Ct. 2008) (Ex. A to Am. Declaratory J. Compl.) (Docket Item 38-2).
[21] Decision & J., Carleton v. Vigue, No. CV-06-55 (Me. Sup. Ct. Dec. 5, 2008) (Ex. 5 to Pl.'s SMF) (Docket Item 40-6).   Jeremiah Carleton has withdrawn any claim he might have to recover from Peerless Insurance Company the defense costs incurred by Jeffrey Vigue in defending the Carleton lawsuit.  Def.'s Resp. to Pl.'s Second Req. for Admis. ¶¶ 9-10.
[22] Although Carleton provided no argument on Count VII for mutual mistake restitution, that claim seeks a remedy that necessarily requires a finding of mutual mistake and, thus, I treat it in connection with the other mutual mistake claims.

for Jeffrey Vigue and through that coverage, underinsured motorist insurance coverage for Jeremiah Carleton." Id. Neither the allegations in Carleton's Amended Answer and Counterclaims nor the factual record on summary judgment support his claim of mutual mistake.

Under Maine law, "the party seeking reformation must prove the existence of mutual mistake by clear and convincing evidence." Yaffie v. Lawyer's Title Ins. Corp., 710 A.2d 886, 888 (Me. 1998). "A mutual mistake is one reciprocal and common to both parties, where each alike labors under the misconception in respect to the terms of the written instrument." Id. (internal quotation omitted). The mistake must be material to the transaction. Id.; see also Poling v. Northup, 652 A.2d 1114, 1116 (Me. 1995). The unilateral understanding of one party does not provide the mutual agreement and mutual mistake required to support the reformation of an insurance contract. Blue Rock Indus. v. Raymond Int'l, Inc., 325 A.2d 66, 77 n.7 (Me. 1974). The purpose of reformation is to effectuate the common intention of parties, not to rewrite a contract contrary to the intent of one party. See id. Other jurisdictions agree that in the absence of a drafting error, fraud or other inequitable conduct, a unilateral mistake is not a creditable basis for reformation. See, e.g., Coleman Co. v. Cal. Union Ins. Co., 960 F.2d 1529 (10th Cir. 1992) (applying Kansas law); Motors Ins. Co. v. Bud's Boat Rental, Inc., 917 F.2d 199 (5th Cir. 1990) (applying Louisiana law policies and holding that policies should be reformed if they fail to reflect mutual intentions of the parties due to unilateral mistake made by insurer or his agent in drafting the

6

agreement); <u>Cont'l Cas. Co. v. Didier</u>, 783 S.W.2d 29 (Ark. 1990); 2 Eric Mills
Holmes & Mark S. Rhodes, <u>Appleman on Insurance</u> § 8.3 (2d ed. 2001).

Assuming that Jeffrey Vigue (and Jeremiah Carleton through the
assignment) has standing as an intended third-party beneficiary to bring this
claim, I find no evidence of any mutual mistake in the record.  Carleton asserts
that "Timothy Vigue testified that he intended to have the Peerless policy cover
himself, his business employees and his entire household and that he
communicated this to the Peerless agent James Sanborn, and that Sanborn
understood this intent and intended for the contract to reflect as such."  Def.'s
Opp'n to Pl.'s Mot. for Summ. J. at 7.  The summary judgment record raises a
material issue of fact as to what Timothy Vigue intended regarding who would
be covered by the liability insurance, and therefore I accept his asserted intent
for purposes of summary judgment.  But even if the testimony construed in
Carleton's favor supports the assertion that *Timothy Vigue* intended liability
coverage for his family when they drove vehicles other than those listed in the
policy declarations or being used in connection with the garage business,
Carleton has no admissible evidence that *agent Sanborn* understood that
Timothy Vigue wanted such coverage.  Vigue is not competent to testify as to
what Sanborn "understood."  He can testify what he told Sanborn and what
Sanborn said to him that might bear upon that issue, but Carleton has
presented no statements by Sanborn to support Vigue's conclusion about what

Sanborn "understood."[23]   To the contrary, Sanborn's own affidavit provides in relevant part as follows:

> 5.     Timothy Vigue was . . . interested in having liability insurance coverage for all persons, whether family members or not, who were performing tasks on behalf of his garage business and while driving one of the three motor vehicles used in that business.
>
> 6.     At no time did I believe that the Peerless commercial auto policy would provide liability coverage for any member of Timothy Vigue's family when that family member was driving a vehicle that was not a specifically described covered automobile under the terms of the policy, or when that family member was not acting as an employee of Timothy Vigue's business.
>
> 7.     At all times, it was my understanding that the only motor vehicles for which the Peerless commercial auto policy provided liability coverage were those vehicles listed in the policy declarations; those vehicles leased, hired, rented, or borrowed by Timothy Vigue's garage business; and other vehicles used in connection with that business.
>
> 8.     I never represented to Timothy Vigue that the Peerless commercial automobile policy would provide liability coverage for his family members when they were neither acting as an employee of his business, nor driving a motor vehicle owned, leased, hired, rented, or borrowed by his business.

Aff. of James Sanborn ¶¶ 5-8 ("Sanborn Aff.") (Ex. 3 to Pl.'s SMF) (Docket Item 40-4).   Timothy Vigue's testimony does not refute Sanborn's understanding.   Thus, the undisputed facts in this case do not support *mutual* mistake.   Carleton does not argue that either Peerless or its agents acted fraudulently or engaged in any other inequitable conduct during the negotiation of the insurance policy.   See 2 Lee R. Russ & Thomas F. Segalla,

---

[23] I have consulted the Timothy Vigue deposition pages cited in paragraphs 10-14 of Carleton's Statement of Material Facts.  See Def.'s Statement of Material Facts ¶¶ 10-14 (Docket Item 44).

Couch On Insurance § 26:1 (3d ed. 1995).  Therefore, even if Timothy Vigue intended to obtain coverage, his unilateral understanding does not provide the mutual agreement and mutual mistake required to support reformation.  For the same reason, Carleton has no admissible evidence that Jeffrey Vigue was a mutually intended beneficiary of the insurance contract that Sanborn was to procure from Peerless and, thus, there is no issue of fact regarding Counterclaim Count II.[24]

### III.  CONCLUSION

Accordingly, I **GRANT** summary judgment to the plaintiff Peerless on its Amended Declaratory Judgment Complaint and **DECLARE** that Peerless Insurance Company had no duty to defend or indemnify Jeffrey Vigue for the motor vehicle accident that occurred on November 5, 2005, in Appleton, Maine. In addition, I **GRANT** summary judgment to the plaintiff Peerless on all of the defendant Carleton's counterclaims.

**SO ORDERED.**

**DATED THIS 10TH DAY OF AUGUST, 2009**

/s/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[24] In his brief Carleton asserts that Jeffrey Vigue was an intended third-party beneficiary of the insurance contract between Timothy Vigue and Peerless and, thus, that Carleton, through an assignment of rights by Jeffrey Vigue, is entitled to recover damages for Peerless' breach of contractual duties owned to Jeffrey Vigue.  Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 10-12 (Docket Item 43).  Since Carleton makes no argument that the language of the liability or uninsured motorist provisions of the Peerless policy actually provides coverage for the accident, I infer that Counterclaim Count II is based solely on the policy's failure to provide coverage.